## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN OVERSIGHT,<br>1030 15th Street NW, B255<br>Washington, DC 20005,<br><br>               *Plaintiff,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY,<br>245 Murray Lane SW<br>Washington, DC 20528,<br><br>U.S. CUSTOMS AND BORDER<br>PROTECTION,<br>1300 Pennsylvania Avenue NW<br>Washington, DC 20229,<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT,<br>500 12th Street SW<br>Washington, DC 20536,<br><br>U.S. CITIZENSHIP AND IMMIGRATION<br>SERVICES,<br>P.O. Box 648010<br>Lee's Summit, MO 64064,<br><br>and<br><br>U.S. DEPARTMENT OF LABOR,<br>200 Constitution Avenue NW<br>Washington, DC 20210,<br><br>               *Defendants.* | Case No. 25-cv-1932 |

## **COMPLAINT**

*Introduction*

1.      American Oversight brings this action in response to the Trump Administration's mass deportation efforts, which have become increasingly aggressive, sweeping, and—by the President's own tacit admission—politically motivated.

2.      Specifically, he has directed immigration enforcement agencies "to do all in their power" to detain and deport undocumented immigrants in "America's largest cities," which the President characterized as the "core of the Democrat Power Center." In doing so, he invoked unfounded conspiracy theories about non-citizen voting, further revealing that these efforts are driven less by public safety concerns than by partisan objectives.[1]

3.      This directive marked the culmination that began shortly after President Trump's inauguration, when the Administration swiftly rolled back policies protecting sensitive locations like schools and churches from immigration enforcement. It soon launched highly publicized raids and implemented aggressive enforcement strategies, purportedly prioritizing the apprehension of violent criminals who were in the country illegally.[2]

---

[1] *See* Richard Luscombe, *Trump Promises Expanded Immigration Crackdown After 'No Kings' Protests*, The Guardian (June 16, 2025, 11:50 AM), https://www.theguardian.com/us-news/2025/jun/16/trump-immigration-protests-ice-budget; Rebecca Falconer and Russell Contreras, *Trump Orders ICE to Step Up Deportation Efforts in Democrat-Run Cities*, Axios (June 16, 2025), https://www.axios.com/2025/06/16/trump-ice-democrat-cities-immigration-deport; Alexandra Hutzler, *Trump Doubles Down on Expanding Deportations in America's Biggest Cities*, ABC News (June 16, 2025, 2:01 PM), https://abcnews.go.com/Politics/trump-doubles-expanding-deportations-americas-biggest-cities/story?id=122894265; Sam Levin, *ICE Agents Detain US Citizen as LA Immigration Raids Continue: 'It's Racial Profiling,'* The Guardian (June 16, 2025, 6:42 PM), https://www.theguardian.com/us-news/2025/jun/16/los-angeles-immigration-raids-montebello.

[2] Rebecca Santana, *Trump Administration Throws Out Policies Limiting Migrant Arrests at Sensitive Spots Like Churches*, Assoc. Press (updated Jan. 21, 2025, 8:01 PM), https://apnews.com/article/immigration-enforcement-sensitive-locations-trump-ab0d2d2652e9df696f14410ebb52a1fc; Priscilla Alvarez & Rosa Flores, *Trump Administration Launches Nationwide Immigration Enforcement Blitz*, CNN (updated Jan. 27, 2025, 2:09 AM), https://www.cnn.com/2025/01/26/politics/chicago-immigration-trump-ice/index.html.

4.    By upending more than a decade of immigration policy shielding sensitive locations from enforcement activities, the Administration's new hardline posture, according to some experts, threaten "devastating consequences for immigrant families and their children, including U.S. citizen children, [by] deterring them from receiving medical attention, seeking out disaster relief, attending school, and carrying out everyday activities."[3]

5.    However, it soon became clear that the Administration's enforcement efforts were not just focused on violent criminals.

6.    Rather, under mounting pressure to meet the President's goal of achieving the largest mass deportation effort in U.S. history, the Administration expanded its immigration enforcement efforts, ensnaring droves of people with no criminal backgrounds, including beloved community members with families, student protestors with valid visas, tourists, and U.S.-born children with foreign-born mothers.[4]

7.    In a bid to further unilaterally expand his immigration enforcement power, the President even attempted to invoke the Alien Enemies Act—an 18th-century wartime law previously invoked only during the War of 1812, World War I, and World War II. A federal judge swiftly held that the statute could not be summarily invoked solely for mass immigration or law

---

[3] Santana, *supra* n.2.

[4] *See* Jack Healy, *A Missouri Town Was Solidly Behind Trump. Then Carol Was Detained.*, N.Y. Times (updated May 29, 2025), https://www.nytimes.com/2025/05/28/us/missouri-immigrant-trump.html; Bernd Debusmann, Jr., *Who Has Been Arrested by ICE Under Trump?*, BBC (June 11, 2025), https://www.bbc.com/news/articles/c86p821p660o; Lauren Barrón-López et al., *Children Who Are U.S. Citizens Deported Along with Foreign-Born Mothers, Attorneys Say*, PBS News Hour (Apr. 28, 2025, 6:50 PM), https://www.pbs.org/newshour/show/children-who-are-u-s-citizens-deported-along-with-foreign-born-mothers-attorneys-say; Aamer Madhani, *Trump Directs ICE to Expand Deportations in Democratic-Run Cities, Undeterred by Protests*, Assoc. Press (June 15, 2025, 10:51 PM), https://apnews.com/article/trump-ice-deportations-protests-65fa8d64ea12a78a0ee0ebeea008ee4d.

enforcement purposes.[5]

8.      Undeterred, the Administration continued to escalate its immigration enforcement raids by widening its focus to workplaces, such as targeting day laborers in the parking lot of Home Depot and workers at a clothing factory near Los Angeles, as well as small businesses, meat-processing facilities, gas stations, mom-and-pop restaurants, construction sites, farms, and manufacturing locations.[6]

9.      These escalated tactics—increasingly divorced from the Administration's supposed goal of targeting violent criminals—have spurred protest and resistance throughout the affected communities, and induced alarm among employers, who report that workers are not showing up for work out of fear.[7]

10.     While those protests do not appear to have moved the Trump Administration to change course, political pressure from the President's own allies did.

11.     Facing growing concerns from leaders in the agricultural, hospitality, and restaurant industries—sectors closely aligned with and supportive of the President—the Administration reportedly directed immigration enforcement authorities to halt arrests at certain workplaces,

---

[5] Aaron Martinez, *'No One Is Above the Law': El Paso Federal Judge Blocks Trump's Use of Alien Enemies Act*, El Paso Times (updated June 13, 2025, 6:40 PM), https://www.elpasotimes.com/story/news/immigration/2025/06/13/el-paso-federal-judge-david-briones-rules-president-trump-cant-deport-migrants-without-due-process/84139084007/.
[6] *See* Tyler Kingkade & Suzanne Gamboa, *How Immigration Raids at Ambiance Apparel and Home Depot Led to the Los Angeles Protests*, NBC News (June 9, 2025, 8:04 PM), https://www.nbcnews.com/news/us-news/la-protests-immigration-raids-ambience-apparel-home-depot-rcna211814; Lydia DePillis & Ernesto Londoño, *Trump Targets Workplaces as Immigration Crackdown Widens*, N.Y. Times (updated June 10, 2025), https://www.nytimes.com/2025/06/07/us/trump-immigration-raids-workplaces.html; Lauren Kaori Gurley et al., *ICE Sets Quotas to Deliver on Immigration Crackdown on Employers*, Wash. Post, June 11, 2025, https://www.washingtonpost.com/business/2025/06/11/trump-immigration-ice-crackdown-employers/.
[7] *See id.*

including farms, restaurants, and hotels.[8]

12.     In effect, the President attempted to carve out exemptions for his political allies, shielding their labor forces from the very raids he touted as necessary for public safety.[9]

13.     Yet just days later, amid broader scrutiny and political backlash, the Administration reversed course again, instructing immigration enforcement officials to resume raids at agricultural businesses, hotels, and restaurants—laying bare the selective and politically motivated nature of these enforcement efforts.[10]

14.     Meanwhile, when protests and isolated incidents of unrest grew in Los Angeles in response to the Administration's divisive immigration crackdown, the President took the extraordinary step of federalizing and deploying the National Guard, as well as hundreds of Marines—over the objection of state and local officials—in response to the protests and to supposedly provide protection for immigration enforcement officers.[11]

15.     California Governor Gavin Newsom filed a legal challenge against the President's use of these military forces in Los Angeles.[12]

16.     Despite these waffling strategies, legal setbacks, and reports that Immigration and Customs Enforcement is already approximately $1 billion over budget, as of the week of this filing,

---

[8] Camilo Montoya-Galvez, *ICE Directed to Pause Immigration Arrests at Farms, Hotels and Restaurants, Sources Tell CBS News*, CBS News (June 14, 2025, 3:07 PM), https://www.cbsnews.com/news/ice-directed-to-pause-immigration-arrests-at-farms-hotels-and-restaurants/.

[9] *See id.*

[10] Carol D. Leonnig et al., *Trump Officials Reverse Guidance Exempting Farms, Hotels From Immigration Raids*, Wash. Post (June 17, 2025, 9:43 PM), https://www.washingtonpost.com/immigration/2025/06/16/trump-farms-hotels-immigration-raids/.

[11] *See What to Know About the Los Angeles Immigration Protests Over ICE Operations*, CBS News (updated June 12, 2025, 3:14 PM), https://www.cbsnews.com/news/california-los-angeles-immigration-protests-trump/.

[12] *See id.*

the President has nonetheless signaled that further immigration crackdowns are imminent.[13]

17. Throughout the first half of 2025, Plaintiff American Oversight submitted multiple requests to multiple federal agencies under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), in order to shed light on the Administration's shifting immigration enforcement priorities, the political considerations driving those actions, and the internal decision-making processes behind this unprecedented escalation in immigration enforcement.

18. Having received no records in response to its FOIA requests, American Oversight now brings this action against the U.S. Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and the U.S. Department of Labor, under FOIA, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

20. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

21. Because Defendants have failed to comply with the applicable time-limit provisions of FOIA, American Oversight is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial action enjoining Defendants from continuing to withhold department or agency records and ordering the production of department or agency records improperly withheld.

---

[13] *See* Luscombe, *supra* n.1.

## **PARTIES**

22.     Plaintiff American Oversight is a nonpartisan, non-profit section 501(c)(3) organization primarily engaged in disseminating information to the public. American Oversight is committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials. Through research and FOIA requests, American Oversight uses the information gathered, and its analysis of it, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases, and other media. The organization is incorporated under the laws of the District of Columbia.

23.     Defendant U.S. Department of Homeland Security ("DHS") is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). The DHS Privacy Office coordinates FOIA requests for several DHS components, including the Office of the Secretary and Deputy Secretary, the Office of the Executive Secretary, the Office of Intergovernmental Affairs, the Management Directorate, the Office of Policy, the Office of Legislative Affairs, and the Office of Public Affairs. DHS has possession, custody, and control of records that American Oversight seeks.

24.     Defendant U.S. Customs and Border Protection ("CBP") is a component of DHS, headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). CBP has possession, custody, and control of records that American Oversight seeks.

25.     Defendant U.S. Immigration and Customs Enforcement ("ICE") is a component of DHS, headquartered in Washington, D.C., and an agency of the federal government within the

meaning of 5 U.S.C. § 552(f)(1). ICE has possession, custody, and control of records that American Oversight seeks.

26.     Defendant U.S. Citizenship and Immigration Services ("USCIS") is a component of DHS, headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). USCIS has possession, custody, and control of records that American Oversight seeks.

27.     Defendant U.S. Department of Labor ("DOL") is a department of the executive branch of the U.S. government headquartered in Washington, DC, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). DOL has possession, custody, and control of records that American Oversight seeks.

## STATEMENT OF FACTS

28.     In late January, late February, and early April, American Oversight submitted multiple separate FOIA requests to DHS, CBP, ICE, USCIS, and DOL seeking various categories of records with the potential to shed light on the administration's plans to effectuate mass deportations of non-citizens in communities throughout the country.

### *DHS Request 1*

29.     On January 28, 2025, American Oversight submitted a FOIA request to DHS ("DHS Request 1"), bearing American Oversight tracking number DHS-25-0212, seeking the following records:

> 1.     All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> any of the Department of Homeland Security officials listed below, and/or anyone communicating on their behalf, such as an assistant, secretary, and/or chief of staff, <u>and</u> containing any of the key terms listed below.
>
> <u>Department of Homeland Security Officials:</u>

       i.      Benjamine Huffman, Acting Secretary
      ii.     Anyone serving as acting Deputy Secretary
     iii.    Anyone serving as acting Executive Secretary
     iv.    Rob Law, Senior Advisor
      v.    Tony Pham, Senior Advisor

Key Terms:
a.     school
b.     university
c.     hospital
d.     church
e.     "place of worship"
f.     "places of worship"
g.     mosque
h.     temple
i.     synagogue

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 1 of this request to emails sent by the specified officials. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an official's response to an email and the initial received message are responsive to this request and should be produced.

**For part 1 of this request, please provide all responsive records from January 20, 2025, through January 24, 2025.**

2.  All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) sent by any of the Department of Homeland Security officials listed above in part 1 and containing any of the key terms listed below.

Key Terms:
a.     "Mayorkas memo"
b.     "sensitive zone"
c.     "sensitive location"
d.     "sensitive area"
e.     "protected zone"
f.     "protected location"
g.     "protected area"
h.     "community zone"
i.     "community location"
j.     "community area"

k.    "special protection"

l.    "enforcement discretion"

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 2 of this request to emails <u>sent</u> by the specified officials. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an official's response to an email and the initial received message are responsive to this request and should be produced.

3.  Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies regarding rescinding the former sensitive locations policy.[]

4.  Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies issued to federal immigration enforcement officers regarding deportation and arrest priorities.

5.  Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies regarding the arrest of individuals in former sensitive locations, including schools, hospitals, or places of worship.

**For parts 2 through 4 of this request, please provide all responsive records from January 20, 2025, through the date the search is conducted.**

A true and correct copy of DHS Request 1 is attached as Exhibit A.

30.    On January 30, 2025, DHS acknowledged receipt of DHS Request 1 and assigned the request tracking number 2025-HQFO-02303. A true and correct copy of DHS's acknowledgement letter is attached as Exhibit B.

31.    As of the date of this filing, American Oversight has not received any further correspondence or a final determination from DHS regarding DHS Request 1.

*DHS Request 2*

32.     On February 21, 2025, American Oversight submitted a FOIA request to DHS ("DHS Request 2"), bearing American Oversight tracking number DHS-25-0459, seeking the following records:

> All email communications (including emails, complete email chains, calendar invitations, and attachments thereto) sent by any of the officials listed below, or anyone communicating on their behalf such as an assistant or scheduler, to any email address ending in .com, .co, .us, .net, .org, .mail, .edu, .law, .legal, .ch, .me, or .group.
>
> <u>Department of Homeland Security Officials</u>:
> i. Kristi Noem, Secretary
> ii. Benjamine Huffman, Acting Deputy Secretary
> iii. Rob Law, Senior Advisor
> iv. Tony Pham, Senior Advisor
> v. Anyone serving as Chief of Staff
> vi. Pete Flores, Acting Commissioner, Customs and Border Protection
> vii. John Modlin, Acting Deputy Commissioner, Customs and Border Protection
> viii. Michael Banks, Chief, U.S. Border Patrol
> ix. Caleb Vitello, Acting Director, Immigration and Customs Enforcement
> x. Kenneth Genalo, Acting Deputy Director, Immigration and Customs
> xi. Jon Feere, Chief of Staff, Immigration and Customs Enforcement
> xii. Todd Lyons, Acting Executive Associate Director, Enforcement and Removal Operations
> xiii. Garrett Ripa, Deputy Executive Associate Director, Enforcement and Removal Operations
> xiv. Russell Hott, former Acting Executive Associate Director, Enforcement and Removal Operations
> xv. Peter Berg, former Deputy Executive Associate Director, Enforcement and Removal Operations
>
> In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited its request to emails sent by the specified individuals. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an individual's response to an email from an email address ending in .com and the initial received message are responsive to this request and should be produced.

> **Please provide all responsive records from January 20, 2025, through February 21, 2025.**

A true and correct copy of the DHS Request 2 is attached as Exhibit C.

33.     On February 27, 2025, DHS acknowledged receipt of DHS Request 2 via an emailed letter and assigned the request tracking number 2025-HQFO-02549. A true and correct copy of the letter is attached as Exhibit D.

34.     As of the date of this filing, American Oversight has not received any further correspondence or a final determination from DHS regarding DHS Request 2.

*CBP Request 1*

35.     On January 28, 2025, American Oversight submitted a FOIA request to CBP ("CBP Request 1"), bearing American Oversight tracking number DHS-CBP-25-0214, seeking the following records:

1.  All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> any of the Customs and Border Protection officials listed below, and/or anyone communicating on their behalf, such as an assistant, secretary, and/or chief of staff, <u>and</u> containing any of the key terms listed below.

<u>Customs and Border Protection Officials</u>:
i.      Anyone serving as Commissioner
ii.     Anyone serving as Deputy Commissioner
iii.    Anyone serving as Chief, U.S. Border Patrol
iv.     Anyone serving as Deputy Chief, U.S. Border Patrol

<u>Key Terms</u>:
a.      school
b.      university
c.      hospital
d.      church
e.      "place of worship"
f.      "places of worship"
g.      mosque
h.      temple

i.      synagogue

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 1 of this request to emails <u>sent</u> by the specified officials. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an official's response to an email and the initial received message are responsive to this request and should be produced.

**For part 1 of this request, please provide all responsive records from January 20, 2025, through January 24, 2025.**

2. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> any of the Customs and Border Protection officials listed above in part 1 <u>and</u> containing any of the key terms listed below.

   <u>Key Terms</u>:
   a.      "Mayorkas memo"
   b.      "sensitive zone"
   c.      "sensitive location"
   d.      "sensitive area"
   e.      "protected zone"
   f.      "protected location"
   g.      "protected area"
   h.      "community zone"
   i.      "community location"
   j.      "community area"
   k.      "special protection"
   l.      "enforcement discretion"

   In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 2 of this request to emails <u>sent</u> by the specified officials. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an official's response to an email and the initial received message are responsive to this request and should be produced.

3. Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies

regarding rescinding the former sensitive locations policy.[]

4.  Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies issued to CBP agents regarding deportation and arrest priorities.

5.  Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies regarding the arrest of individuals in former sensitive locations, including schools, hospitals, or places of worship.

**For parts 2 through 4 of this request, please provide all responsive records from January 20, 2025, through the date the search is conducted.**

A true and correct copy of CBP Request 1 is attached as Exhibit E.

36.    On January 29, 2025, CBP acknowledged receipt of CBP Request 1 via email, and assigned the request tracking number CBP-FO-2025-056057. A true and correct copy of CBP's email is attached as Exhibit F.

37.    On February 5, 2025, CBP emailed American Oversight with questions about part of CBP Request 1. A true and correct copy of CBP's email is attached as Exhibit G.

38.    On February 6, 2025, American Oversight emailed CBP and responded to its questions. A true and correct copy of American Oversight's email is attached as Exhibit H.

39.    On March 20, 2025, CBP emailed American Oversight advising that a previously submitted American Oversight FOIA request that is not the subject of this litigation had been closed, asserting that "it is a duplicate" of another American Oversight request and that CBP would search for those previously requested records as part of its response to CBP Request 1. A true and correct copy of CBP's email is attached as Exhibit I.

40.    As of the date of this filing, American Oversight has not received any further correspondence or a final determination from CBP regarding CBP Request 1.

*CBP Request 2*

14

41.    On February 24, 2025, American Oversight submitted a FOIA request to CBP ("CBP Request 2"), bearing American Oversight tracking number DHS-CBP-25-0482, seeking the following records:

1.  All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) sent by any of the Customs and Border Protection officials listed below, and/or anyone communicating on their behalf, such as an assistant, secretary, and/or chief of staff, and containing any of the key terms listed below.

    Customs and Border Protection Officials:
    i. Peter Flores, Acting Commissioner
    ii. John Modlin, Acting Deputy Commissioner
    iii. Jason Owens, Acting Chief Operating Officer
    iv. Michael Banks, Chief, U.S. Border Patrol
    v. Anyone serving as Deputy Chief, U.S. Border Patrol

    Key Terms:
    a. I9
    b. I-9
    c. "I 9"
    d. e-verify
    e. everify
    f. "e verify"
    g. audit
    h. raid
    i. "round up"
    j. round-up
    k. roundup
    l. collateral

    In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 1 of this request to emails sent by the specified individuals. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an individual's response to an email and the initial received message are responsive to this request and should be produced.

2.  Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to Customs and Border

Protection (CBP) regarding collateral arrests, or the arrest of people who are not the original targets, made during immigration raids or other coordinated enforcement actions.[]

3.  Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to CBP regarding the detainment of U.S. citizens during immigration raids or other coordinated enforcement actions.

4.  Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to CBP regarding I-9 or e-verify audits.

5.  Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to CBP regarding the presence of medical personnel at immigration raids or other coordinated enforcement actions.

6.  All records reflecting policies, procedures, and practices—both formal and informal—prepared by, received by, or otherwise in the possession of CBP regarding immigration raids.

**For all parts of this request, please provide all responsive records from January 20, 2025, through the date the search is conducted.**

A true and correct copy of CBP Request 2 is attached as Exhibit J.

42.    On February 25, 2025, CBP acknowledged receipt of CBP Request 2 via email, and assigned the request tracking number CBP-FO-2025-071386. A true and correct copy of CBP's email is attached as Exhibit K.

43.    As of the date of this filing, American Oversight has not received any further correspondence or a final determination from CBP regarding CBP Request 2.

*ICE Request 1*

44.    On January 28, 2025, American Oversight submitted a FOIA request to ICE ("ICE Request 1"), bearing American Oversight tracking number DHS-ICE-25-0213, seeking the

16

following records:

1. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> any of the Immigration and Customs Enforcement officials listed below, and/or anyone communicating on their behalf, such as an assistant, secretary, and/or chief of staff, <u>and</u> containing any of the key terms listed below.

   <u>Immigration and Customs Enforcement Officials</u>:
   i. Caleb Vitello, Acting Director
   ii. Kenneth Genalo, Acting Deputy Director
   iii. Jon Feere, Chief of Staff
   iv. Anyone serving as acting Director, Enforcement and Removal Operations

   <u>Key Terms</u>:
   a. school
   b. university
   c. hospital
   d. church
   e. "place of worship"
   f. "places of worship"
   g. mosque
   h. temple
   i. synagogue

   In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 1 of this request to emails <u>sent</u> by the specified officials. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an official's response to an email and the initial received message are responsive to this request and should be produced.

   **For part 1 of this request, please provide all responsive records from January 20, 2025, through January 24, 2025.**

2. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> any of the Immigration and Customs Enforcement officials listed above in part 1 <u>and</u> containing any of the key terms listed below.

   <u>Key Terms</u>:

    a.   "Mayorkas memo"
    b.   "sensitive zone"
    c.   "sensitive location"
    d.   "sensitive area"
    e.   "protected zone"
    f.   "protected location"
    g.   "protected area"
    h.   "community zone"
    i.   "community location"
    j.   "community area"
    k.   "special protection"
    l.   "enforcement discretion"

> In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 2 of this request to emails sent by the specified officials. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an official's response to an email and the initial received message are responsive to this request and should be produced.

3.   Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies regarding rescinding the former sensitive locations policy.[]

4.   Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies issued to ICE officers regarding deportation and arrest priorities.

5.   Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies regarding the arrest of individuals in former sensitive locations, including schools, hospitals, or places of worship.

> **For parts 2 through 4 of this request, please provide all responsive records from January 20, 2025, through the date the search is conducted.**

A true and correct copy of ICE Request 1 is attached as Exhibit L.

45.   On February 4, 2025, ICE acknowledged receipt of ICE Request 1 via email, invoked a 10-day extension to respond, and assigned the request tracking number 2025-ICFO-16476. A true and correct copy of ICE's email is attached as Exhibit M.

46.     As of the date of this filing, American Oversight has not received a final determination from ICE regarding ICE Request 1.

*ICE Request 2*

47.     On February 24, 2025, American Oversight submitted a FOIA request to ICE ("ICE Request 2"), bearing American Oversight tracking number DHS-ICE-25-0481, seeking the following records:

> 1. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) sent by any of the Immigration and Customs Enforcement officials listed below, and/or anyone communicating on their behalf, such as an assistant, secretary, and/or chief of staff, and containing any of the key terms listed below.
>
> <u>Immigration and Customs Enforcement Officials</u>:
> i. Caleb Vitello, former Acting Director
> ii. Anyone serving as Director
> iii. Kenneth Genalo, Acting Deputy Director
> iv. Jon Feere, Chief of Staff
> v. Todd Lyons, Acting Executive Associate Director, Enforcement and Removal Operations
> vi. Garrett Ripa, Deputy Executive Associate Director, Enforcement and Removal Operations
> vii. Russell Hott, former Acting Executive Associate Director, Enforcement and Removal Operations
> viii. Peter Berg, former Deputy Executive Associate Director, Enforcement and Removal Operations
> ix. Robert Hammer, Acting Executive Associate Director, Homeland Security Investigations
>
> <u>Key Terms</u>:
> a. I9
> b. I-9
> c. "I 9"
> d. e-verify
> e. everify
> f. "e verify"
> g. audit
> h. raid
> i. "round up"
> j. round-up

k. roundup

l. collateral

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 1 of this request to emails sent by the specified individuals. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an individual's response to an email and the initial received message are responsive to this request and should be produced.

2. Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to Immigration and Customs Enforcement (ICE) regarding collateral arrests, or the arrest of people who are not the original targets, made during immigration raids or other coordinated enforcement actions.[]

3. Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to ICE regarding the detainment of U.S. citizens during immigration raids or other coordinated enforcement actions.

4. Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to ICE regarding I-9 or e-verify audits.

5. Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to ICE regarding the presence of medical personnel at immigration raids or other coordinated enforcement actions.

6. All records reflecting policies, procedures, and practices—both formal and informal—prepared by, received by, or otherwise in the possession of ICE regarding immigration raids.

**For all parts of this request, please provide all responsive records from January 20, 2025, through the date the search is conducted.**

A true and correct copy of ICE Request 2 is attached as Exhibit N.

48.    On February 27, 2025, ICE acknowledged receipt of ICE Request 2 via email, invoked a 10-day extension to respond, and assigned the request tracking number 2025-ICFO-21466. A true and correct copy of ICE's email is attached as Exhibit O.

49.    As of the date of this filing, American Oversight has not received a final determination from ICE regarding the ICE Request 2.

*ICE Request 3*

50.    On April 4, 2025, American Oversight submitted a FOIA request to ICE ("ICE Request 3"), bearing American Oversight tracking number ICE-25-0956, seeking the following records:

1.    All email communications (including emails, complete email chains, calendar invitations, and attachments thereto) <u>sent</u> by any of the Immigration and Customs Enforcement officials listed below, <u>and</u> containing any of the following key terms.

<u>Immigration and Customs Enforcement Officials</u>:
i.      Todd Lyons, Acting Director
ii.     Caleb Vitello, former Acting Director
iii.    Madison Sheahan, Acting Deputy Director
iv.     Jon Feere, Chief of Staff
v.      Kenneth Genalo, Acting Deputy Executive Associate Director, Enforcement and Removal Operations
vi.     Garrett Ripa, former Acting Deputy Executive Associate Director, Enforcement and Removal Operations
vii.    Russell Hott, former Acting Executive Associate Director, Enforcement and Removal Operations
viii.   Peter Berg, former Deputy Executive Associate Director, Enforcement and Removal Operations

<u>Key Terms</u>:
a.      "search and seizure"
b.      "searches and seizures"
c.      "search & seizure"
d.      "searches & seizures"
e.      "fourth amendment"
f.      "4th amendment"
g.      "4 amendment"
h.      "use of force"

    i.      warrant
    j.      warrantless
    k.    "knock-and-talk"
    l.     "knock-and-talks"
    m.   "knock and talk"
    n.    "knock and talks"
    o.    "probable cause"

In an effort to reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 1 of this request to emails <u>sent</u> by the specified individuals. However, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an individual's response to an email and the initial received message are responsive to this request and should be produced.

2. Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to ICE regarding the Fourth Amendment, including search and seizure authority and the use of warrants.

3. Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to ICE regarding use of force.

4. Records reflecting any training materials given to ICE related to the Fourth Amendment, including search and seizure authority and the use of warrants.

   Responsive records may include, but should not be limited to, PowerPoint slides, informational handouts, summary documents, handwritten or typed notes, training videos, or any other records used in trainings.

5. Records reflecting any training materials given to ICE related to use of force.

   Responsive records may include, but should not be limited to, PowerPoint slides, informational handouts, summary documents, handwritten or typed notes, training videos, or any other records used in trainings.

6. Records reflecting any final legal advice or analysis (including both formal legal analyses or memoranda, as well as informal electronic communications) regarding the Fourth Amendment, including search and seizure authority and the use of warrants.

**For all parts of this request, please provide all responsive records from January 20, 2025, through the date the search is conducted.**

A true and correct copy of ICE Request 3 is attached as Exhibit P.

51.    On April 10, 2025, ICE acknowledged receipt of ICE Request 3 via email, invoked a 10-day extension to respond, and assigned the request tracking number 2025-ICFO-29986. A true and correct copy of ICE's email is attached as Exhibit Q.

52.    As of the date of this filing, American Oversight has not received a final determination from ICE regarding ICE Request 3.

*USCIS Request*

53.    On February 24, 2025, American Oversight submitted a FOIA request to USCIS ("USCIS Request"), bearing American Oversight tracking number DHS-USCIS-25-0483, seeking the following records:

1. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) sent by any of the Citizenship and Immigration Services officials listed below, and/or anyone communicating on their behalf, such as an assistant, secretary, and/or chief of staff, and containing any of the key terms listed below.

Citizenship and Immigration Services Officials:
i. Anyone serving as Director
ii. Kika Scott, Acting Deputy Director
iii. Aaron Calkins, Chief of Staff

Key Terms:
a. I9
b. I-9
c. "I 9"
d. e-verify

     e. everify
     f. "e verify"
     g. audit
     h. raid
     i. "round up"
     j. round-up
     k. roundup

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 1 of this request to emails sent by the specified individuals. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an individual's response to an email and the initial received message are responsive to this request and should be produced.

2. Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to Citizenship and Immigration Services regarding I-9 or e-verify audits.

**For both parts of this request, please provide all responsive records from January 20, 2025, through the date the search is conducted.**

A true and correct copy of the USCIS Request is attached as Exhibit R.

54.    On February 24, 2025, USCIS acknowledged receipt of the USCIS Request via emailed letter, invoked a 10-day extension to respond, and assigned the request tracking number COW2025001340. A true and correct copy of USCIS's letter is attached as Exhibit S.

55.    As of the date of this filing, American Oversight has not received any further correspondence or a final determination from USCIS regarding the USCIS Request.

*DOL Request*

56.    On February 24, 2025, American Oversight submitted a FOIA request to DOL ("DOL Request"), bearing American Oversight tracking number DOL-25-0484, seeking the following records:

1. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) sent by any of the Department of Labor officials listed below, and/or anyone communicating on their behalf, such as an assistant, secretary, and/or chief of staff, and containing any of the key terms listed below.

Department of Labor Officials:
i. Vince Micone, Acting Secretary
ii. Keith Sonderling, Senior Advisor to the Secretary
iii. Anyone serving as Deputy Secretary
iv. Laura Dawkins, Deputy Assistant Secretary for Policy
v. Albert Herrera, Director, Office Regulatory and Programmatic Policy

Key Terms:
a. raid
b. "round up"
c. round-up
d. roundup
e. undocumented
f. non-citizen
g. noncitizen
h. "non citizen"
i. non-U.S.
j. non-US
k. "non U.S."
l. alien
m. illegals
n. migrant
o. immigration
p. "foreign national"
q. deport
r. H2A
s. H-2A
t. visa

In an effort to accommodate your office and reduce the number of potentially responsive records to be processed and produced, American Oversight has limited part 1 of this request to emails sent by the specified individuals. To be clear, however, American Oversight still requests that complete email chains be produced, displaying both sent and received messages. This means that both an individual's response to an email and the initial received message are responsive to this request and should be produced.

2. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) between any of the officials listed above in part 1, and (b) any of the external entities listed below (including the listed domains).

External Entities:
a. American Farm Bureau Federation (fb.org)
b. National Chicken Council (chickenusa.org)
c. National Milk Producers Federation (nmpf.org)
d. Perdue Farms (perduefarms.com)
e. Tyson Foods (tyson.com)
f. United Farm Workers Foundation (ufwfoundation.org)

Please note that American Oversight does not seek, and that this request specifically excludes, the initial mailing of news clips or other mass distribution emails. However, subsequent communications responding to or forwarding such emails are responsive to this request. In other words, for example, if an official received a mass-distribution news clip email from the National Chicken Council, that initial email would not be responsive to this request. However, if the official forwarded that email to another listed individual with their own commentary, that subsequent message would be responsive to this request and should be produced.

3. Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies created by, issued to, or otherwise provided to the Department of Labor regarding immigration raids or other coordinated enforcement actions.

4. Records reflecting any formal or informal final impact assessments, reports, or analyses (including memoranda and other written products) created by or otherwise provided to the Department of Labor regarding immigration raids or other coordinated enforcement actions.

**For all parts of this request, please provide all responsive records from January 20, 2025, through the date the search is conducted.**

A true and correct copy of the DOL Request is attached as Exhibit T.

57.    On February 25, 2025, DOL acknowledged receipt of the DOL Request via two

emails and assigned the request two tracking numbers: 2025-F-08085 and 2025-F-08087. True and correct copies of DOL's emails are attached as Exhibit U.

58.    On March 6, 2025, DOL emailed American Oversight and advised that the portion of the DOL request assigned tracking number 2025-F-08085 had been "classified as 'complex' due to 'unusual circumstances' . . . ."  A true and correct copy of DOL's email is attached as Exhibit V.

59.    On March 20, 2025, DOL emailed a letter to American Oversight and advised that DOL is not able to respond to the portion of the request assigned tracking number 2025-F-08087 within the time limits established by FOIA. A true and correct copy of DOL's emailed letter is attached as Exhibit W.

60.    As of the date of this filing, American Oversight has not received any further correspondence or a final determination from DOL regarding the DOL Request.

*Exhaustion of Administrative Remedies*

61.    As of the date of this Complaint, Defendants have failed to (a) notify American Oversight of final determinations regarding American Oversight's FOIA requests, including the scope of responsive records Defendants intend to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

62.    Through Defendants' failure to respond to American Oversight's FOIA requests within the time period required by law, American Oversight has constructively exhausted its administrative remedies and seeks immediate judicial review.

**COUNT I**
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

63.    American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

64.    American Oversight properly requested records within the possession, custody, and control of Defendants.

65.    Defendants are agencies subject to FOIA, and they must therefore make reasonable efforts to search for requested records.

66.    Defendants have failed to promptly review agency records for the purpose of locating those records that are responsive to the American Oversight's FOIA requests.

67.    Defendants' failures to conduct adequate searches for responsive records violate FOIA and applicable regulations.

68.    Plaintiff American Oversight is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly make reasonable efforts to search for records responsive to American Oversight's FOIA requests.

## COUNT II
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

69.    American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

70.    American Oversight properly requested records within the possession, custody, and control of Defendants.

71.    Defendants are agencies subject to FOIA and must therefore release in response to FOIA requests any non-exempt records and provide lawful reasons for withholding any materials.

72.    Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to produce non-exempt records responsive to American Oversight's

FOIA requests.

73.    Defendants' failures to provide all non-exempt responsive records violate FOIA and applicable regulations.

74.    Plaintiff American Oversight is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to American Oversight's FOIA requests and provide indexes justifying withholdings of any responsive records withheld under claims of exemption.

## **REQUESTED RELIEF**

WHEREFORE, American Oversight respectfully requests the Court to:

(1) Order Defendants to conduct a search or searches reasonably calculated to uncover all records responsive to American Oversight's FOIA requests;

(2) Order Defendants to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to American Oversight's FOIA requests and indexes justifying the withholding of any responsive records withheld under claim of exemption;

(3) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to American Oversight's FOIA requests;

(4) Award American Oversight the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) Grant American Oversight such other relief as the Court deems just and proper.


Dated: June 20, 2025                        Respectfully submitted,

                                            */s/ Daniel Martinez*
                                            Daniel Martinez

D.C. Bar No. 90025922
Benjamin A. Sparks
D.C. Bar No. 90020649

AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-2465
(202) 873-1741
danny.martinez@americanoversight.org
ben.sparks@americanoversight.org

*Counsel for Plaintiff*